510 P.2d 933

**STATE of Utah, Plaintiff and Respondent,**

v.

**Ronald Dale EASTHOPE, Defendant and Appellant.**

**No. 12739.**

Supreme Court of Utah.

May 29, 1973.

———◆———

David P. Rhode, Salt Lake Legal Defenders Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David S. Young, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Ronald Easthope appeals seeking to reverse his conviction by a jury of the crimes of rape, sodomy, and robbery. His contention is that he was convicted by spurious evidence obtained in violation of his constitutional rights against self-incrimination and to counsel.[1]

On January 26, 1971, Terri D———— G————, a 22-year-old woman who lived

---

1. This defendant was convicted of rape on another victim, some of the facts are similar, including the nylon stocking over his face, see State v. Easthope, 28 Utah 2d 244, 501 P.2d 109 (1972). The issue raised there was concerning the admission of a confession by defendant.

alone in her apartment, had fallen asleep on her living room sofa after watching night television. About 3 a. m. she was awakened by a tapping on her head. A man wearing green gloves and a nylon stocking over his face, was standing over her holding a gun. By use of force and threats defendant compelled the victim to remove her clothing and then subjected her to the violence of the stated offenses; and took her money, thirty dollars, and left. She then called her upstairs neighbors, and tried to go up there, but collapsed on the way.

A month later, in investigating the case, two Salt Lake City detectives called on defendant, told him they were investigating a case and asked his permission to search the premises. He agreed. They did. The next day they returned and, after informing him of his constitutional rights, asked him if he would be willing to stand in a line-up to ascertain his possible involvement in the Terri D_____ G_____ rape case. Defendant again agreed. He was again told about his rights, including that of counsel, and that they applied to the line-up. He said he saw no need to have an attorney present at the line-up. It was conducted that evening. The persons who stood in it all had nylon stockings over their heads; and each spoke a few words.

The defendant was identified by Terri D_____ G_____ as her assailant. Defendant was then placed under arrest. The officer again reminded him of his legal rights, and asked if he wanted to make any statement. He said no, and asked for an attorney. A phone book opened to the lawyers section was offered, but he declined to make any call. He asked the officer the basis of his arrest, and was told that he had been identified in the line-up. The defendant made a remark similar to that he had made in the other case: that he did not see how anybody could identify him with a silk stocking over his face.

Prior to the trial, defense counsel moved to suppress the case of evidence concerning identification at the line-up on the ground that he was denied his constitutional right to have counsel present; and also to suppress any evidence concerning the statement he made on the ground that it violated his constitutional right against self-incrimination, which he had not knowingly and intelligently waived. Both motions were denied and the evidence was used at the trial.

■ Every person under accusation of a crime is assured the right to counsel by our state and the federal constitutions.[2] Defendant places reliance upon the cases of United States v. Wade [3] and Gilbert v. Cali-

2. Utah Const. Art. I, Sec. 12; U.S.Const. Amend. VI.

3. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

fornia.[4] The right to counsel at a line-up stated as a generality, is seriously to be questioned. In the usual circumstances it is not only impractical but serves no useful purpose. Assume that several men may be possible suspects. They are asked to stand in a line-up. Each demands the right to have counsel present. Maybe none of them are identified. Even if one is, having counsel present for all of the others was quite useless; and the same is true for the one identified.

 Since the cases of Wade and Gilbert just referred to, the generality has been limited in the case of Kirby v. Illinois [5] that, ". . . it has been firmly established that a person's . . . right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information or arraignment." We have heretofore asserted our accord with the Kirby decision.[6] The principle is applicable here because the line-up was in the investigatory phase and before the defendant was arrested.

 We think it appropriate to further express our view that notwithstanding what has been said in the cases above referred to, where a line-up is used as part of an investigation of crime, whether before or after a charge has been filed, it must be conducted in a fair, reasonable and impartial manner.[7] Nevertheless, ordinarily there is no practical necessity for, nor requirement of, the presence of counsel at a line-up; and there is no violation of the right unless under the circumstances it should reasonably appear that some useful purpose might be served thereby, and that the person under investigation, after being informed of his rights, expresses a desire for counsel, neither of which existed in the instant case.

 Defendant's motion to suppress the statement he made about anyone identifying him when he had had a nylon stocking over his face was likewise without merit. It is true that statements taken from an accused by police officers who have him in custody should be carefully scrutinized as to possible duress; and that admissions or confessions should not be exacted until and unless the accused has been advised on his constitutional rights. Here this had been done and he had in effect claimed his privilege against self-incrimination by saying he did not want to make any statement, and that he wanted a law-

4. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

5. 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972).

6. State v. Wettstein, 28 Utah 2d 295, 501 P.2d 1084 (1972).

7. See statement in State v. Ervin, 22 Utah 2d 216, 220, 451 P.2d 372 (1969). Also see Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

yer.[8] It was he who initiated the further conversation by asking the basis of his arrest. When the officer told him he had been identified in the line-up, he voluntarily made the response of which he now complaints. The privilege against self-incrimination does not protect an accused against statements he voluntarily makes after he has been informed of his rights.[8]

The trial court was justified in determining that the defendant's constitutional rights had not been infringed and in denying the motions to suppress the questioned evidence.

Affirmed.

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

---

8. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Farnworth, 24 Utah 2d 223, 469 P.2d 9 (1970); State v. Jiminez, 22 Utah 2d 233, 451 P.2d 583 (1969); State v. Scandrett, 24 Utah 2d 202, 468 P.2d 639 (1970).