512 P.2d 1028

**In re Ann GOALEN.**

**No. 13326.**

Supreme Court of Utah.

July 26, 1973.

**28**

David S. Dolowitz of Salt Lake County Bar Legal Services, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., William T. Evans, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a denial of a petition filed under Rule 65B, Utah Rules of Civil Procedure, praying for a mandate ordering the warden of the Utah State Prison to let petitioner marry one Easthope, a convicted rapist, sodomist and robber, whose conviction was upheld recently, on May 29th, by this court.[1] Affirmed.

In that case Easthope unsuccessfully claimed a defense under the Fifth Amendment. In a previous case,[2] where he also was convicted of rape, he unsuccessfully claimed a defense under the Sixth Amendment. It goes without saying that Easthope's record involves many years' imprisonment.

In the instant case, petitioner claims a defense in his behalf under the Fourteenth Amendment, so that she and he have pretty well run the pertinent Bill of Rights plus the Fourteenth Amendment gamut.

Hardly could they invoke the Second Amendment having to do with militia and guns, or the Third prohibiting soldiers being quartered during wartime, or the Fourth having to do with Watergate sub-Americana, or the Seventh re jury trials involving more than $20, or with the Eighth touching capital punishment, bail, fines, and the like, or the Ninth which seems to be an overture leading to the Tenth—and certainly not the Tenth, which is the last of the Bill of Rights, about which amendment Easthope could care less. However, in the writer's opinion, this amendment is one of the most important and sacred Rights of all, albeit the most neglected and shunned as if it were a plague, by not only the lowest in an invidious bureaucracy but by the highest in a sometime Sleepy Hollow judiciary.

The thrust of Ann's petition: That marriage is a "fundamental" right, denial of which is unconstitutional. This is an ipse dixit. Both sides concede that this is a novel, unprecedented case where no state or federal court yet has ventured to invade or water down states' rights or scorch

1. State v. Easthope, 29 Utah 2d 400, 510 P.2d 933 (1973).

2. State v. Easthope, 28 Utah 2d 244, 501 P.2d 109 (1972).

the Tenth Amendment by constitutionally categorizing marriage here under the Fourteenth. This would appear to be inescapable after two centuries of obvious acceptance of the clear, unambiguous Tenth Amendment concept that powers not delegated to the federal government are reserved to the states. Racial problems, not marriage, per se, have been the subject of constitutionality, where marriage is not; but racism justifies, for example, the invalidation of a law that strikes down a marriage between two persons of different race. Such circumstance is reflected in Loving v. Virginia,[3] upon which appellant here so heavily relies. That case is inapropos because it was based on discrimination because of racial classification where the principals, white and black, were citizens with equal rights,—not as here where one of the principals has her civil rights, perhaps, but the other has lost his because the state, under its legitimate police power, has a perfect right, in our opinion, to protect the community against the repeated incursions into the privacy of decent people by a proven sex deviate, who, for aught we know, by marriage while in prison, might have an opportunity[4] to pro-

create and sire one who might be like father like son, which might provoke an amelioration by the plea of a wife, who, because of the marriage, may be the subject of pity or unwarranted public welfare.

When and if the Supreme Court of the United States says the Fourteenth Amendment guarantees an unrestricted right for two persons of any character or status to marry—the 50 states to take it lying down —simply because citizens or resident aliens or felons, or syphilitics, etc.[5] profess to have unlimited civil rights, and that a felon has the same constitutional right to marry, and perhaps become a behind-bars father without any semblance of parental control,—which also would deny to the states a right to prevent a couple of homosexuals, for example, from marrying, or condone the switch of wives by swingers, this country then will have switched to legalized indiscriminate sex proclivities with a consequent rising incidence of disease, poverty, and indolence,— but worse, to subject unwary citizens to the whim and caprice of the federal establishment,—not the states,—leading to a substitution of a bit of judicial legislation for

3. 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

4. Which counsel for appellant conceded in argument might give rise to another civil rights suit demanding a constitutional right to force the state to admit Ann to the prison so that this inmate might consummate the marriage.

5. See Title 30–1, U.C.A.1953, for at least ¾ of a century has been accepted as a state's right marriage authority,—almost absolute: age, sex, lunacy, bigamy, authority of one marrying others, epilepsy, license, waiting period, interlocutory periods, etc.,—marriage between races being an exception per U.S.Sup.Ct. decision.

plain ordinary, horse sense. It isn't difficult to conclude that this may be giving a warranted and undebatable kudo to the horse.

Appellant, in support of her commendable respect for marriage, as a "fundamental" right, constitutionally irrevocable by the states, must concede that such concept didn't exist, at least judicially, for almost a century, before the Fourteenth Amendment came along. That troublesome bit of history was conceived in a Civil War birth-rate aura, a reconstruction flight to hysterectomy, and a doubtful birth, whose legitimacy has been condoned or legitimized, not in fact, but by use of blinders justified only by passage of time and tradition.

We agree that marriage is "fundamental." We believe that like motherhood and the Boy Scouts, it is an institution, a status, an entente, if you please, with reality, and with whatever man's own religion says it is, —because all of these are universal precepts. However, this does not mean that the Constitution of the United States, which in no uncertain terms says the states are supreme in this country and superior to the philosophy of federal protagonists who deign to suggest that a coterie of 3 or 5 or

even 9 federal persons immune from public intolerance, by use of a pair of scissors and the whorl of a 10¢ ball-point pen, and a false sense of last-minute confessional importance, can in one fell swoop, shakily clip phrases out of the Constitution, substitute their manufactured voids' with Scotch-taped rhetoric, and thus reverse hundreds of cases dimmed only by time and nature, but whose impressions indestructibly already indelibly had been linotyped on the minds of kids and grandkids who vowed and now would or will vow to defend, not only the institution of marriage and motherhood, but to reserve to the states a full budget of legitimate, time-tested mores incident to that doctorate.

Appellant cited authority where the U. S. Supreme Court declared certain rights as being "fundamental," and constitutionally protected.[6] These and other cases are not dispositive here, where the isolated question of whether marriage, per se and federally, is a constitutionally protected right guaranteed to every and all types of citizen.

What we say here is that there are no precedents for appellant's contentions. Nor should there be. The appellant cited cases re marriage or else as being a fundamental

6. Loving v. Virginia, supra, where the litigants' names suggest fundamental rights apparently as imposing as marriage, but hardly protectible on a parity with racial discrimination involved in that case; Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), re access to the courts, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), etc.,—none of which relates to the instant case with respect to marriage.

right. They are inapropos here save by dictum. The idea is thwarted completely by the U. S. Supreme Court's very recent decision [7] which said that "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution." This case destroys appellant's analogy between "education" cases that said it was a "fundamental" right and a marriage case to the same effect,—which former cases mouthed indispositive dictum. [8]

The upshot inquiry of this case is whether under the circumstances the state of Utah has or has not a right under its marriage interdictions, constitutionally to decide whether someone can demand that a convicted rapist, sodomist and robber, federally can claim and enforce a right to marry or consort, irrespective of a state's regulations anent eligibility and qualification for marriage among its domiciliaries.

There is a lot of talk and a lot more ink devoted to philosophical, fine distinctions about "compelling state interests," "careful scrutiny" of state action, "fundamental rights," "rational basis" for something or other. There are weasel words that seem to obscure, where actually there is no conflict between states' rights or the Tenth Amendment or the Fourteenth Amendment or any other amendment. All of them say

loud and clear that when the Liberty bell rings it is to remind that the individual State, not a federal or administrative agency, or a federal judge is supreme.

In answering defendant's examples of "fundamental" rights protected either "explicitly" by the wording of the Constitution, or "implicitly" by stare decisis, one might quote San Antonio v. Rodrigues, supra, to the effect that

Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected.

We think marriage is even more a matter for states' rights under the Tenth Amendment as is education.

Saying so, we believe and hold that the refusal of the warden to permit the marriage by virtue of the Board of Corrections' rules and regulations and the legislative authority granted to such agency, does not violate petitioner's constitutional rights or those of her convicted friend.

CALLISTER, C. J., and ELLETT, J., concur.

TUCKETT, J., concurs in the result.

7. San Antonio v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

8. Loving v. Virginia, supra, etc.

**32**

CROCKETT, Justice (concurring separately).

I have no disagreement with the denial of the petition to compel the warden to permit the marriage in this case, nor with the ideas that such matters are within the discretionary powers of the prison authorities in the management and discipline within the prison, nor that in most all cases prisoners should not be permitted to marry. But I make the observation that in my judgment there should be no all inclusive and absolute rule that prisoners cannot marry.

My concern is not so much for the man serving a prison sentence. Yet I make allowance for the fact that there may be some special circumstances where it might be wise and proper to take that into consideration as a part of the entire picture. My apprehension is as to the effect any absolute rule might have upon the rights and interests of others and upon society. Circumstances may exist where, regardless of whether it may or may not be a favor to the prisoner, it may be the wise and expedient course that there be a marriage. It may be for some proper and salutary purpose, such as for example to give legal recognition to an existing de facto family situation, or where it would confer upon a woman or children justly deserved legal status, and/or to protect property rights. For the foregoing reasons I point out the objections of any rigid rule and the desirability of some flexibility to take care of unusual cases if and when they arise.