**STATE of Utah, Plaintiff and Respondent,**

v.

**Martin JENKINS, Defendant and Appellant.**

**No. 13570.**

Supreme Court of Utah.

June 25, 1974.

---

Gary Don Stott, Provo, for defendant and appellant.

Vernon B. Romney, Atty. Gen., M. Reid Russell, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Martin Jenkins appeals from his conviction by a jury of forgery of a check for $148 which he cashed at Halladay's Market in Provo on the 10th day of March, 1973. He argues that he was not afforded due process of law and given a fair trial because of (a) improper use of photographs in ascertaining his identity, (b) failure to give desired weight to a polygraph (lie detector) test, and (c) that the State's evidence is not of sufficient credibility to show beyond a reasonable doubt that he committed the offense.

The defendant was identified by Mrs. Indra Barney, cashier at the market, and by Elmo L. Halladay the proprietor, both of whom observed him in the store at the time of the cashing of the check. Mrs. Barney testified concerning his proffer of the check for groceries and a balance in cash; that she took it to Mr. Halladay for approval, and that the defendant then endorsed thereon the name of Ted Perkins.

After it was found out that the check was a forgery, the police brought some photographs from which the above mentioned witnesses picked out the defendant. It is urged that this procedure was unfair because it was done outside of the presence of and without the knowledge and consent of the defendant or his counsel; and that it could be unfairly manipulated. Wherefore he contends that there should be a more formal procedure, with the safeguards attendant upon line-ups.[1] This argument ignores the impracticability of line-up formalities when the suspect is not in custody.

The use of photographs is recognized as a proper and practical means of searching out persons suspected of crime which has been used effectively for many years. The fact that there is a line-up procedure which also may be used when it is practical or desirable does not discredit identification by photographs. It is true

1. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

that either procedure is subject to being used either fairly or unfairly. The desired objective and the requirement is that the identification should be conducted in a fair, reasonable and impartial manner,[2] with a view to protecting the innocent and finding the guilty.[3]

▬ Innate in the protections of the accused in our law,[4] including the confrontation of and cross-examination of witnesses, is the purpose of assuring fairness of procedures, and of discrediting or nullifying evidence which was unfairly or improperly obtained. In this case there is no indication whatsoever that there was anything unduly suggestive or unfair in the police officer's showing the witnesses the several photographs. We have heretofore indicated our approval of such procedure; and that the showing of photographs to victims of a crime for the purpose of identifying its perpetrator does not violate defendant's right to counsel and other protections he contends for under due process of law.[5]

In regard to the polygraph (lie detector) test: The evidence was received by stipulation, so we are not concerned with the question of its admissability.[6] The operator, who gave his qualifications as an expert in this field, testified that on the basis of the tests, the indications were that the defendant was not lying; and, without objection thereto, he stated his opinion that the defendant was telling the truth when he denied signing the forged check. The defendant essays the position that from this testimony, coupled with the fact that the test did not affirmatively demonstrate that he was lying, it must be assumed that he was telling the truth, or at least that this cast sufficient doubt on the question

of his guilt, that the jury could not fairly believe beyond a reasonable doubt he was guilty.

If the lie detector test had the reliability and the compelling effect defendant contends for, we could use it and eliminate the rest of the criminal proceedings, including the trial, the jury, and the verdict. Whether it be fortunate or unfortunate, the determination of guilt or innocence of crime has not become quite that simple. The polygraph test is an attempt to use a scientific method to observe and analyze a person's responses and reactions under programmed conditions and stimuli to determine whether he is telling the truth or lying about a given subject or circumstance. But the operator himself admitted the obvious fact that it cannot determine with absolute and invariable assurance either that he is lying, or that he is telling the truth.

▬ When this evidence was received, it had the same status as any other evidence: that is, it was to be considered by the jury in connection with all of the other evidence in the case; and it was their prerogative to give it whatever credibility they thought it was entitled to.[7] They were properly instructed to that effect; and that they could not convict the defendant unless upon all of the evidence considered together, they believed that the defendant was guilty beyond a reasonable doubt.

▬ In attacking the credibility of the State's evidence the defendant points to what he asserts are discrediting discrepancies in the testimony of its main witnesses, Mrs. Barney and Mr. Halladay. They amount simply to minor differences in observation such as the number of photo-

2. See Kirby v. Illinois, footnote 1 above; and State v. Easthope, 29 Utah 2d 400, 510 P.2d 933.

3. State v. Ervin etc., 22 Utah 2d 216, 220, 451 P.2d 372.

4. Secs. 11 & 12, Art. I, Utah Constitution.

5. See State v. Volberding, 30 Utah 2d 257, 516 P.2d 359, citing Kirby v. Illinois, footnote 1 above.

6. For cases dealing with the admissibility of evidence concerning polygraph test see, Powers v. Carvalho, R.I., 281 A.2d 298; State v. Chavez, 82 N.M. 238, 478 P.2d 566; State v. Trotter, 110 Ariz. 61, 514 P.2d 1249; and State v. Valdez, 91 Ariz. 274, 371 P.2d 894.

7. See Sec. 78–24–1, U.C.A.1953; People v. Chadwick, 7 Utah 134, 25 P. 737; and State v. Scott, 22 Utah 2d 27, 447 P.2d 908.

graphs shown, the exact sequence of events concerning the approval and signing of the check, and where the signature was placed thereon. Such discrepancies, of course, go only to the weight, and not to the competency of the testimony. Though it may seem anomalous, the fact is that differences of that character may well be regarded by the jury as enhancing rather than detracting from its credibility, because it shows that it was not contrived or memorized, but resulted from well known and naturally to be expected differences in individual observations, and the description of events, especially of excited occurrences.

We have found no error which would justify reversal of the verdict and judgment.[8] It is therefore affirmed. No costs awarded.

CALLISTER, C. J., and ELLETT, HENRIOD, and TUCKETT, JJ., concur.

---

8. That there should be no reversal of a judgment for mere irregularity or error is mandated by our statute Sec. 77–42–1, U.C.A. 1953; and see State v. Neal, 1 Utah 2d 122, 262 P.2d 756; State v. Seymour, 18 Utah 2d 153, 417 P.2d 655, and authorities therein cited.