401 A.2d 1261.

## STATE *vs.* RAYMOND W. DELAHUNT.

MAY 24, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

Doris, J. On June 4, 1976, a Superior Court jury convicted Raymond Delahunt on a single indictment charging him with assault with intent to rob. After his motion for a new trial was denied, judgment was entered on the verdict and he was sentenced to serve 10 years at the Adult Correctional Institutions.

In this appeal defendant raises sundry grounds for reversal of his conviction. The thrust of his attack is directed at certain in-court identifications of defendant that allegedly were tainted by prior out-of-court identifications. In addition, he contends that the court below erroneously admitted evidence of a prior criminal act and that he was denied a speedy trial. The pertinent facts are as follows:

At about 4:15 p.m., on the afternoon of February 1, 1975, Mary Sherlock (Sherlock) left the Rhode Island Hospital where she worked and went to her car in the hospital parking lot. As she approached the driver's side of her car, a man came up behind her and said, "I have a gun. Get in the car and give me the keys." The man took her car keys and attempted to start her car, stating that "he wanted the car to get out of the state." But as he soon discovered, Sherlook's car was in a somewhat dilapidated condition and required the skill of a familiar hand to be started. Consequently, he spent five futile minutes attempting to start the car. During this time, she stated that she saw the barrel of a small black

handgun protruding from his left hand. With her assailant thus engaged, Sherlock stated that she took the opportunity to glance toward the front door of the hospital. When she saw people exiting toward her, she fled the car. Moments later, her assailant likewise fled.

Sherlock called the police from the hospital lobby, and four to five cruisers arrived within minutes. She described her assailant and the police commenced an area search. Sherlock accompanied them in one of the cruisers. Twenty-five minutes later, she was taken to view a suspect at a location near the hospital. There she identified defendant, Raymond W. Delahunt, as her assailant. Later that evening, she picked defendant out of a police station lineup.

Paul Gurghigian also identified defendant at this lineup. At trial Gurghigian explained his involvement with defendant. He stated that on February 1, 1975, at about 4 p.m. — the same afternoon as the incident at the Rhode Island Hospital parking lot involving Sherlock — he was sitting at a counter at Grant's Hobby Shop in Providence. At this time, a young man, whom he identified in court as defendant, entered the store and asked to see a starter's pistol. Gurghigian testified that he scrutinized this man because, as a regular customer of the store, he had a habit of keeping a protective eye on the elderly clerk who was then waiting on defendant. The defendant was shown a small black handgun. When the clerk handed the gun to defendant for examination, Gurghigian testified that defendant ran from the store and headed in the general direction of the Rhode Island Hospital.

At trial, the state did not introduce Gurghigian's lineup identification. Instead, the state relied upon Gurghigian's and Sherlock's in-court identifications and upon testimony regarding Sherlock's field identification made shortly after the crime.

### PRIOR CRIMINAL ACT

The defendant's first assignment of error challenges the testimony of Gurghigian. The attack is multifaceted.

Initially, he argues that the admission of testimony concerning prior criminal conduct by defendant — the starter gun theft — was error. The defendant correctly states that such evidence generally lacks relevance. He concedes, however, that a well-settled exception to this rule admits such evidence if it tends to establish "guilty knowledge, intent, motive, design, plan, scheme, system or the like." *State v. Colangelo,* 55 R.I. 170, 173-74, 179 A. 147, 149 (1935). The defendant argues that the exception elucidated in *Colangelo* is inapplicable in this case because it only applies to other criminal conduct that has a similar *modus operandi* to the crime being tried. Here, he contends, the conduct of the person in the hobby store bears no resemblance to the conduct of the person in the hospital parking lot. For this reason, he concludes, the *Colangelo* exception is inapposite. We disagree.

The exception outlined in *Colangelo* is not limited to situations involving similar acts. It also applies to any series of events — although factually dissimilar — constituting a plan or design to achieve an ultimate criminal objective. Here the trial justice reasonably concluded, after a voir dire on a motion to suppress, that the hobby store theft, committed some 20 minutes before the parking lot incident, was part of a larger plan to steal a car. Moreover, we do not believe that the prejudice inherent in this testimony outweighed its probative value.

## LINEUP IDENTIFICATION

The defendant next argues that Gurghigian's in-court identification of defendant was tainted by an earlier suggestive lineup.[1] At the suppression hearing. Gurghigian and two

---

[1] A similar attack had been made against Sherlock's in-court identification at a pretrial suppression hearing. At that hearing, the motion justice ruled that Sherlock's identification was not tainted by the lineup since it derived from an independent source — that is, from perceptions made at the crime scene rather than perceptions made at the lineup. Under *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), such a finding obviated the necessity of analyzing the propriety of the lineup viewed by Sherlock. However, Gurghigian's lineup identification was not discussed at the hearing. It was first challenged during trial at voir dire hearing without jury. Although the independent source issue was discussed by counsel, the trial justice expressed no opinion on the subject.

police officers testified to the makeup and conduct of the lineup. In addition, a photograph of the lineup was introduced. This evidence indicated that Gurghigian viewed four white males of approximately the same height. Each had a similar style moustache and each had a similar hair length. Each was casually dressed. Furthermore, defendant was not wearing the blue jacket previously described to the police as a salient feature in the identification of the man in Grant's Hobby Shop. From this lineup Gurghigian selected defendant without hesitation. The defendant was without counsel. The only discrepancy in Gurghigian's testimony concerned the number of persons in the lineup and whether they were standing or sitting. He thought he had viewed a lineup of five or six seated individuals, as depicted in the lineup photograph. At the conclusion of the hearing, the trial justice denied the motion to suppress, opining that the lineup exceeded the standards of fairness.

We see no reason to disturb this finding. The defendant places great significance on the fact that Gurghigian thought that he had viewed a more numerous lineup, in apparent conflict with the lineup photograph. We fail, however, to see how this minor discrepancy renders the lineup constitutionally infirm.

## RIGHT TO COUNSEL

The defendant also argues that the lineup contravened the right to counsel provision of the Federal and Rhode Island Constitutions and thus tainted the in-court identification made by Gurghigian. We first examine the federal constitutional argument.

In 1967, the Supreme Court held that a post-indictment lineup was a critical stage of the criminal process for sixth amendment purposes and therefore the right to counsel attached to such proceedings.[2] *United States* v. *Wade*, 388

Therefore, while we think there was ample evidence to support such a finding regarding Gurghigian's in-court identification, we decline to make such fact determinations at the appellate level. *Compare State* v. *Rowe*, 314 A.2d 407, 415 (Me. 1974).

[2] The sixth amendment provides in pertinent part: "In all criminal prosecutions, the accused shall * * * have the assistance of counsel for his defense." U.S. Const. amend. VI.

U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). Remedially, the Court proffered a prophylactic exclusionary rule for lineup identifications conducted without the presence of counsel. *Gilbert* v. *California*, 288 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967). Subsequent to these pronouncements, however, some question existed whether the right to counsel also extended to pre-indictment lineups. *See, e.g., In re Holley* 107 R.I. 615, 268 A.2d 723 (1970). In 1972 the Supreme Court resolved this uncertainty in *Kirby* v. *Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972), where it indicated that the right to counsel first arose "after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689, 92 S. Ct. at 1882, 32 L. Ed. 2d at 417.

In the instant case the lineup took place shortly after the commission of the crime, well before the initiation of any formal judicial proceedings. Thus, in light of *Kirby*, defendant had no right under the Federal Constitution to counsel and his argument to the contrary is clearly without merit.

The second portion of defendant's right-to-counsel argument looks to the Rhode Island Constitution for support. In the wake of the Supreme Court's opinion in *Kirby*, some state courts have recognized a preindictment right to counsel under their state constitutions. *See Blue* v. *State*, 558 P.2d 636 (Alas. 1977); *People* v. *Jackson*, 391 Mich. 323, 217 N.W.2d 22 (1974). Others have chosen to construe *Kirby* narrowly when determining the point at which adversary judicial proceedings begin under their particular criminal procedure. *See Commonwealth* v. *Richman*, 458 Pa. 167, 320 A.2d 351 (1974). But many more of the state courts that have considered the issue have followed *Kirby*. *See, e.g. State* v. *Malani*, 578 P.2d 236 (Haw. 1978); *State* v. *Johnson*, 327 So. 2d 388 (La. 1976); *State* v. *Easthope*, 29 Utah 2d 400, 510 P.2d 933 (1973). *See also* cases collected at 46 U. Mo. K.C. L. Rev. 148, 152 n.35 (1977).

572

Our Rhode Island Constitution provides, in language textually similar to its Federal counterpart, that "In all criminal prosecutions, the accused shall * * * have the assistance of counsel in his defense." R.I. Const. art. I, §10. We do not believe that the police lineup in the instant case, held three hours after the crime, was a phase of criminal prosecution for the purposes of our constitution. As the *Kirby* opinion stated:

> "In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the *prosecution*," and that a post-indictment lineup is such a "critical stage." ' (Emphasis supplied.) *Simmons* v. *United States*, 390 U.S. 377, 382-383. We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." 406 U.S. at 690, 92 S. Ct. at 1882-83, 32 L. Ed. 2d at 418.

We are aware that *Kirby* has been received with mixed reactions.[3] Nevertheless, we do not believe that our constitutional provision requires the assistance of counsel at any stage earlier than its Federal counterpart. Accordingly, we adhere to the *Kirby* decision for interpretation of our constitution. *Accord, State* v. *Boyd*, 294 A.2d 459, 463 (Me. 1972).

### SHOWUP IDENTIFICATION

The defendant next assails, on due process grounds, Sherlock's identification at a "showup" of defendant shortly after the crime. The defendant argues that the showup was unfairly suggestive and hence tainted Sherlock's in-court

---

[3]*See, e.g.*, 1975 Wash. U. L. Rev. 423, 433-34.

identification. Although suggestive, as almost all one-to-one confrontations are, we believe that under the "totality of the circumstances" the showup in this case was not constitutionally unfair. *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). In *Stovall* the Court indicated that a suggestive showup is not a per se violation of the due process clause. Rather, to reach constitutional proportions, the suggestiveness must "give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253 (1968). Because of the need for flexibility, the *Stovall* opinion advanced an ad hoc "totality of the circumstances" standard for testing the reliability of an identification. 388 U.S. at 302, 87 S. Ct. at 1972, 18 L. Ed. 2d at 1206. *See Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). *See generally* Sobel, *Eye-Witness Identification* §37 (1972). Factors to be considered in applying this test include:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401, 411 (1972).

With these factors in mind, we turn to the facts in the instant case. The victim testified that she viewed defendant, who was sitting beside her on the front seat of her car, for six to seven minutes. It was late afternoon but still daylight. Although her gaze at times shifted from defendant to the front door of the hospital, her degree of attentiveness was acute. She was no casual observer. She was later able to furnish the police with a detailed description of her assailant, including eye color. And when she saw defendant at the street confrontation, a mere 45 minutes after the crime, her identification was instantaneous and certain.

Balanced against these factors we must consider the suggestiveness of the showup. The victim sat in the rear seat of a police car and viewed defendant, who was standing in front of the car, through the front windshield. The headlights of the car were on. The defendant was handcuffed and surrounded by police officers. Although suggestive that the police thought that this was the culprit, this procedure was not unreasonable considering the nature of the crime and the danger of escape. Moreover, the showup took place shortly after the crime when the victim's memory was freshest and least susceptible to suggestive factors. Thus, considering the "totality of the circumstances," we do not believe that the showup was impermissibly suggestive. *See State v. Lewis,* 115 R.I. 217, 341 A.2d 744 (1975).

## SPEEDY TRIAL

The defendant next contends that he was denied his sixth amendment right to a speedy trial. The applicable constitutional standard for evaluating speedy trial violations is laid out in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *See State v. Paquette,* 117 R.I. 505, 368 A.2d 566 (1977); *State v. McDonough,* 115 R.I. 383, 347 A.2d 41 (1975), *noted in* 11 Suffolk U. L. Rev. 662 (1977). In *Barker* the Court listed four elements for consideration:

(1) length of the delay,

(2) reason for the delay,

(3) assertion of sixth amendment rights,

(4) prejudice to the accused.

These elements, the Court cautioned, are interrelated; they must be balanced against each other in an ad hoc fashion in the light of the facts of a particular case — no one factor being decisive.

Applying these factors in the instant case, we first focus on the length of delay. The defendant was tried on June 1-4, 1976, 16 months after his arrest and 9 months after his indictment. This length of time, on its face, triggers the

necessity for inquiry into the other three *Barker* factors, 407 U.S. at 530, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117.

Accordingly, we next inquire into the reason for the delay. The record does not indicate why it took seven months to indict defendant after his arrest. And the record is similarly unclear why it took nine months after the indictment to bring defendant to trial. On May 14, 1976, shortly before his trial, defendant was heard on a motion to dismiss for lack of a speedy trial. On this occasion, a rather truncated hearing took place at which the state offered no explanation for the trial delay. Indeed, the only reference to this matter was a rather oblique reference made by the motion justice concerning the number of cases on the court calendar. The record, therefore, is insufficient to support the state's reliance in its brief on court congestion as a mitigating circumstance. Accordingly, we must weigh the reason-for-delay factor negatively against the state. *See State* v. *Crapo*, 112 R.I. 729, 735, 315 A.2d 437, 440-41 (1974).

Next we consider to what degree defendant asserted his sixth amendment right to a speedy trial — the pivotal factor in our disquisition. The defendant filed two motions concerning this matter: one on October 6, 1975, for a speedy trial and one on May 6, 1976, for dismissal for lack of a speedy trial. However, on May 12, 1976, defendant filed his first motion to suppress identification testimony. Failure to complete such a basic step in trial preparation suggests that defendant was not ready for trial during most of the period between indictment and trial. Thus, such procrastination dilutes the vitality of defendant's prior motions concerning speedy-trial rights.

Finally, we must assess the prejudice caused to the accused by the delay. The record before us indicates that during the period he was awaiting trial on the instant indictment, defendant was serving a two-year sentence at the Adult Correctional Institutions for another crime. Notwithstanding this, defendant argues that any chance he had for parole or furlough, as well as for various inmate privileges, were lost

while he awaited trial. The force of defendant's argument is diminished, however, by the fact that, at the May 14, 1976, hearing the motion justice indicated that defendant's extensive criminal record lessened his chances for parole. *See State* v. *Rollins,* 113 R.I. 280, 283-84, 320 A.2d 103, 105 (1974), *noted in* 9 Suffolk U. L. Rev. 1017 (1975).

On balance, in light of all of the above discussion on the matter, we are not persuaded that defendant has been denied his constitutional right to a speedy trial.

We have carefully considered the other arguments raised in the defendant's brief and find them without merit.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

MR. JUSTICE JOSLIN, concurring.   I agree that neither the federal nor our own state constitution entitles an accused to the assistance of counsel at a preindictment lineup. Concurrence on that score, however, does not mean that I am unaware that the potential for suggestive procedures and for abuse is present at a preindictment lineup just as it is at one that occurs subsequent to the initiation of adversary judicial proceedings. The Constitution minimizes that potential at post-indictment lineups by guaranteeing an accused the right to the presence of counsel. *Kirby* v. *Illinois,* 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). By monitoring the fairness of lineup procedures, counsel can assist an accused both in protecting his rights at the lineup and in preserving challenges for later review.

I would protect the accused at preindictment lineups as well by requiring the law enforcement authorities to take a color photograph of the lineup and additional color photographs of each participant, thereby enabling a reviewing court effectively to evaluate procedural fairness. Although the prosecution's failure to produce such photographs should not itself invalidate an identification, I believe that such an

omission, if unexplained, should be deemed to be evidence the lineup was tainted by suggestive procedures. *State* v. *Earle*, 60 N.J. 550, 552, 282 A.2d 2, 3 (1972).

Several courts have cited with approval police regulations requiring photographs or other forms of recording lineups for later review. *United States* v. *Hamilton*, 420 F.2d 1292, 1295 (D.C. Cir. 1969); *People* v. *Jones*, 47 Mich. App. 160, 163, 209 N.W.2d 322, 324 (1973); *see People* v. *Fowler*, 1 Cal. 3d 335, 346-48, 461 P.2d 643, 652-53, 82 Cal. Rptr. 363, 372-73 (1969). Commentators have also suggested similar procedures. *E.g.*, Sobel, *Eye-Witness Identification* §56.03 at 107 (1972); Murray, *The Criminal Lineup at Home and Abroad*, 1966 Utah L. Rev. 610, 627-28. I would adopt this requirement because an accused who is unable to reconstruct a lineup may be denied an effective means of challenging it.

Mr. Justice Kelleher, with whom Mr. Chief Justice Bevilacqua joins, dissenting. In 1970 this court held that the right to counsel enunciated in *Wade* and *Gilbert* applies to all lineups, whether they are conducted before or after the return of indictment. *In re Holley*, 107 R.I. 615, 618-19, 268 A.2d 723, 725-26 (1970). At that time we considered the Court's reference to post-indictment lineups in those cases as being merely descriptive of the particular factual situation then present. Almost 2 years later, in *Kirby* v. *Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972), the United States Supreme said otherwise. In a plurality decision, Mr. Justice Stewart held that an accused's sixth- and fourteenth-amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689, 92 S. Ct. at 1882, 32 L. Ed. 2d at 417.

Today, the majority holds that an accused in this state no longer enjoys a right to counsel at a preindictment lineup under either the United States or Rhode Island Constitution since it is not a "phase of criminal prosecution." While I agree that we are bound by the *Kirby* Court's interpretation of the Federal Constitution, I feel that the individual liberties

at stake here require that we adopt a higher standard of protection by relying upon the assistance-of-counsel guarantee afforded by the Declaration of Rights that is embodied in art. I, §10, of the Rhode Island Constitution. In the past we have adopted a similar course of action. *See State* v. *Maloof,* 114 R.I. 380, 389, 333 A.2d 676, 681 (1975).

In the post-*Kirby* era, at least three states have held that an accused is entitled to have counsel present at a preindictment identification proceeding. *Blue* v. *State,* 558 P.2d 636 (Alas. 1977); *People* v. *Jackson,* 391 Mich. 323, 217 N.W.2d 22 (1974); *Commonwealth* v. *Richman,* 458 Pa. 167, 320 A.2d 351 (1974).

In *Richman* the defendant had been found guilty of burglary and rape and on appeal argued that he had been denied his right to counsel at a lineup conducted some 4½ hours after his arrest but before he had been indicted. The Supreme Court of Pennsylvania reasoned that *Kirby's* ultimate concern was with striking a balance between the "right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." 406 U.S. at 691, 92 S. Ct. at 1883, 32 L. Ed. 2d at 418-19. Stating that *Kirby* only sought to limit the *Wade* rule when the interest of society would be enhanced, the court held that in Pennsylvania, judicial proceedings begin at the time of arrest. The *Wade* rule was, therefore, held to apply to all confrontations conducted after arrest. The court hastened to add that its decision did not require counsel at prompt on-the-scene indentifications. *Commonwealth* v. *Richman,* 458 Pa. at 174 N.5, 320 A.2d at 354 n.5.

In *Jackson* the defendant had been convicted of assault with intent to rob. On appeal he raised several issues, among which was the one stating that the trial judge should have excluded the victim's in-court identification testimony as well as testimony pertaining to her pretrial identifications because he had apparently been denied counsel at certain photographic and lineup procedures. Aside from the *Wade-Gilbert-Kirby* trilogy, the appeal involved *United States* v.

*Ash*, 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973), where the Supreme Court held that the sixth amendment does not guarantee an accused the right to counsel at photographic displays at which witnesses attempt to identify a suspect. After discussing each case, the Michigan Supreme Court held that

> "independent of any Federal constitutional mandate * * * both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel and that, except in exigent circumstances, photographs of a suspect known to be in custody or who can readily be produced for a lineup may not be displayed to witnesses." *People* v. *Jackson*, 391 Mich. at 338, 217 N.W.2d at 27.[1]

The court's decision was based on its view that the best evidence of an eyewitness' identification of a suspect is his response to a fairly conducted lineup unaffected by an earlier photographic display of the suspect.

In *Blue* the Supreme Court of Alaska ruled that under its constitution a suspect in custody is entitled to have counsel present at a preindictment lineup unless exigent circumstances exist in which efforts to provide counsel would unduly interfere with a prompt and purposeful investigaton. The court concluded, however, that providing counsel at Blue's lineup, which was conducted just 3 hours after the crime and at 11 p.m., could have precluded the state's diligent attempt to obtain an identification while the eyewitness' memory was still fresh.

---

[1]In a footnote the court stated that "[a] violation of either or both rules will entitle a defendant to a hearing to determine whether the witness' subsequent corporeal identification has a source independent of the photographic identification." *People* v. *Jackson*, 391 Mich. 323, 339 n.16, 217 N.W.2d 22, 28 n.16.

I subscribe to the sentiments expressed in *Jackson* and *Blue*. In balancing the state's concern for a "prompt and purposeful investigation of an unsolved crime" with a suspect's right "to be protected from prejudicial procedures," I believe that a suspect, once in custody, has a right to have counsel present at a preindictment lineup unless exigent circumstances exist. In *Holley* this court quoted at length from *People* v. *Fowler*, 1 Cal. 3d 335, 461 P.2d 643, 82 Cal. Rptr. 363 (1969), where the California Supreme Court in a pre-*Kirby* decision held that the *Wade-Gilbert* rules were not restricted to post-indictment lineups.[2] I feel it necessary to reiterate now that "[a] lineup which occurs prior to the point in question may be fraught with the same risks of suggestions as one occurring after that point, and may result in the same far-reaching consequences for the defendant." *Id.* at 342, 461 P.2d at 649, 82 Cal. Rptr. at 369. As Judge Sobel states: "In practical effect the *Kirby* plurality has not only reversed *Wade's* counsel requirement but also *Wade's* principal salutary accomplishment." Indeed, as this distinguished jurist points out, the federal constitutional right to counsel is now afforded to a defendant at a time when "he least needs it." Sobel, *Eye-Witness Identification* §17 at 33 (1972).

Since I can find no evidence that the state's investigation here would have been placed in jeopardy by providing the defendant with counsel prior to conducting the lineup, I would hold that he has been denied his right to counsel under art. I., §10, of our constitition. In applying this standard, I would follow the principle we set forth in *State* v. *Gannites*, 101 R.I. 216, 219-21, 221 A.2d 620, 622-23 (1966), and hold that the right to counsel would apply to lineups taking place 7 days following the publication of this opinion.

---

[2]In 1973 the California Supreme Court stated that in light of *Kirby* its *Fowler* decision was no longer controlling *People* v. *Chojnacky*, 8 Ca. 3d 759, 764, 505 P.2d 530, 533, 106 Cal. Rptr. 106, 109 (1973). There is some dispute whether *Chojnacky* overrules *Fowler*. *See People* v. *Johnson*, 85 Cal. App. 3d 684, ___, 149 Cal. Rptr. 661, 664-65 (1978).

*Dennis J. Roberts II*, Attorney General. *John S. Foley,* Special Assistant Attorney General, for plaintiff.

*Mann & Roney, Robert B. Mann,* for defendant.