391 So.2d 192 (1980)
Daniel W. GLUESENKAMP, Appellant,
v.
STATE of Florida, Appellee.
Hubert Dwight MASSENGALE et al., Appellants,
v.
STATE of Florida, Appellee.
Joseph Francis MOUW et al., Appellants,
v.
STATE of Florida, Appellee.
Nos. 57124, 56928 and 57131.
Supreme Court of Florida.
October 16, 1980.
Rehearing Denied January 14, 1981.
*195 William R. Slaughter, II of Slaughter & Slaughter, Live Oak, and James K. Jenkins, Atlanta, for Gluesenkamp, appellant.
Jim Smith, Atty. Gen. and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee in No. 57124.
Larry G. Turner of Turner & Morris, Gainesville, for Massengale and Kring, appellants.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee in Nos. 56928 and 57131.
David Roth of Cone, Owen, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for Mouw and Hartwig, appellants.
BOYD, Justice.
These consolidated cases are before the Court on appeal from judgments rendered by the Circuit Court of the Third Judicial Circuit, in and for Hamilton County. In rendering the judgments the circuit court passed upon the constitutionality of section 570.15, Florida Statutes (1977) and (Supp. 1978). Therefore, we have jurisdiction of the appeals. Art. V, § 3(b)(1), Fla. Const.
In case no. 57,124, Dan W. Gluesenkamp was charged in a two-count information with possession of cannabis in excess of one hundred pounds with intent to sell and possession of cannabis in excess of five grams, both being offenses prohibited by section 893.13, Florida Statutes (1977). After pleading not guilty, the appellant moved to dismiss the information and to suppress evidence. Thereby he challenged both the constitutionality of section 570.15, Florida Statutes (1977), and the legality of the search performed after a highway stop executed pursuant to that statute. After the court denied his motions to dismiss and to suppress evidence, the appellant changed his plea to nolo contendere, specifically reserving the right to appeal these two rulings. The court then adjudicated him guilty and imposed sentence.
In case no. 56,928, Hubert Dwight Massengale and Mason Gregory Kring were jointly charged in a two-count information with possession of cannabis in excess of one hundred pounds with intent to sell and possession of cannabis in excess of five grams. After pleading not guilty, the appellants moved to suppress evidence. In their motion they challenged the constitutionality of section 570.15, Florida Statutes (Supp. 1978) and questioned the legality of a search performed after they were stopped on the highway pursuant to that section. The court denied the motion and the appellants entered a plea of nolo contendere, specifically reserving the right to appeal the court's ruling on the motion. The court adjudicated the appellants guilty on both counts and sentenced them.
In case no. 57,131, Joseph Francis Mouw and Paul Marion Hartwig were jointly charged in a two-count information with possession of cannabis in excess of one hundred pounds with intent to sell and possession of cannabis in excess of five grams. *196 After pleading not guilty, the appellants moved to suppress evidence. The motion challenged the constitutionality of section 570.15, Florida Statutes (Supp. 1978) and questioned the legality of a search performed after they were stopped on the highway pursuant to that section. The court denied the motion and the appellants entered a plea of nolo contendere, specifically reserving the right to appeal the court's ruling on the motion. The court then adjudicated the appellants guilty on both counts and sentenced them.
In case no. 57,124, appellant Gluesenkamp and Debra Cain were traveling in the appellant's van on January 15, 1978. With Ms. Cain at the wheel, they passed an agricultural inspection station without stopping. A Department of Agriculture inspection officer gave chase and pulled the van over. Cain got out of the vehicle to talk to the officer while the appellant drew together the curtain that separated the front seat from the cargo area of the van. Cain told the inspector they were hauling plants. The inspector asked to see the documents pertaining to the cargo of plants. Cain then went to the van, talked to the appellant, and returned to say that they were hauling potting soil. The inspection officer asked to look in the van and the appellant refused. The inspector then required Gluesenkamp and Cain to return in the van to the inspection station.
At the inspection station the appellant again refused to allow the inspector to look inside the van. The inspector arrested Cain for passing the station without first stopping for inspection, a misdemeanor proscribed by section 570.15(2), Florida Statutes (1977). The inspector contacted his supervisor and an hour later a deputy sheriff, an assistant state attorney, and an investigator arrived at the inspection station. They looked through the van's windows and saw some burlap-colored bundles which they believed contained cannabis. The appellant surrendered a key to them after they told him they had probable cause for a search, did not need a warrant, and would break the van open if he refused. They found what they believed to be cannabis and the deputy arrested Gluesenkamp and Cain.
In case no. 56,928, appellants Massengale and Kring were traveling in a van on the night of July 20, 1978, and they proceeded past an agricultural inspection station. An inspection officer went after and stopped them, and asked them to return to the station. The inspector arrested Massengale for failing to stop for inspection in violation of section 570.15(2), Florida Statutes (Supp. 1978), and asked if he could look inside. Kring, the owner of the van, opened the door. The inspector saw several large bundles wrapped in burlap and plastic and smelled cannabis. He summoned a deputy sheriff who confirmed that the bundles contained cannabis and arrested the appellants.
In case no. 57,131, appellants Mouw and Hartwig, on June 18, 1978, passed an agricultural inspection station without stopping, were apprehended, and accompanied an inspection officer back to the station. There appellant Mouw opened the van. The inspector observed a large compartment built into the bed of the vehicle. He saw cannabis seeds on the floor and smelled cannabis. He arrested the appellants for violation of section 570.15, Florida Statutes (Supp. 1978). Then the vehicle was searched pursuant to warrant and over three hundred pounds of cannabis were found in the compartment.
All of the appellants in these consolidated cases challenge the constitutionality of section 570.15, requiring all trucks to stop at agricultural inspection stations, and question the statute's applicability to them on the ground that their vans are not trucks within the meaning of the statute. Each appellant argues that if the initial apprehensions pursuant to the statute were thus unlawful, the evidence subsequently seized is the fruit of such illegality and the convictions cannot stand.
Section 570.15, Florida Statutes (1977), provides:
570.15. Access to places of business and vehicles.-
(1)(a) The commissioner, assistant commissioner, directors, counsel, experts, *197 chemists, agents, inspectors, road-guard inspection special officers, and other employees and officers of the department shall have full access at all reasonable hours to all:
1. Places of business;
2. Factories;
3. Farm buildings;
4. Carriages;
5. Railroad cars;
6. Trucks;
7. Motor vehicles, other than private passenger automobiles with no trailer in tow or any vehicles bearing an RV license tag;
8. Truck and motor vehicle trailers;
9. Vessels; and
10. All records pertaining thereto; used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.
(b) If such access be refused by the owner, agent, or manager of such premises or by the driver of such aforesaid vehicle, the inspector or road-guard inspection special officer may apply for a search warrant which shall be obtained as provided by law for the obtaining of search warrants in other cases, or may conduct a search of any of the aforesaid vehicles without a warrant pursuant to s. 933.19.
(c) Such departmental officers, employees, and road-guard inspection special officers may examine and open any package or container of any kind containing or believed to contain any article or product which may be transported, manufactured, sold, or exposed for sale in violation of the provisions of this chapter, the rules of the department, or the laws which the department enforces and may inspect the contents thereof and take therefrom samples for analysis.
(2) It shall be unlawful for any truck or any truck or motor vehicle trailer to pass any official road-guard inspection station without first stopping for inspection. A violation of this subsection shall constitute a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
Subsection (1) of the statute pertains to "access" in the context of the inspection functions of the Department of Agriculture. All of the enumerated places and conveyances to which "access" is provided for by subsection (1)(a), are qualified by the clause, "used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department." If a vehicle or place does not come within the meaning of this qualifying clause, then the departmental officials have no right of "access."
Subsection (2) of the statute forbids "any truck or any truck or motor vehicle trailer to pass any official road-guard inspection station without first stopping for inspection." In Stephenson v. Department of Agriculture and Consumer Services, 342 So.2d 60 (Fla. 1976), we held that the requirement that all trucks stop at inspection stations is a valid exercise of the police power. The appellant argued there that to require his trucks to stop was irrational, since they never carried agricultural products. Thus we have held in effect that the state may require vehicles to stop even though the department may have no right of access to them under the statute. Trucks, truck trailers, and motor vehicle trailers are required to stop in order for the department officials to determine whether they have a right of access, and, if so, whether to exercise it.
The appellants argue that their vans are not trucks within the meaning of section 570.15(2), Florida Statutes (Supp. 1978). "Truck" is not defined in section 570.15 or anywhere in chapter 570. But the Florida Uniform Traffic Control Law defines it as "Any motor vehicle designed, used, or maintained primarily for the transportation of property." § 316.003, Fla. Stat. (1979); ch. *198 71-135, § 1, Laws of Fla. Chapter 320 of Florida Statutes, (1977), pertaining to drivers' licenses, defines "truck" as including "any motor vehicle designed or used principally for carrying things other than passengers and includes a motor vehicle to which has been added a cabinet box, platform, rack, or other equipment for the purpose of carrying merchandise other than the person or effects of the passengers." § 320.01(13), Fla. Stat. (1977). Section 323.01(12), Florida Statutes (1977), in the chapter pertaining to the regulation of motor carriers, provides: "`Truck' includes any self-propelled motor vehicle designed and used principally for carrying things other than passengers."
Some vans are designed or maintained so as to have a cargo area to the rear of the front seats. Such vans, since they are designed specifically for transporting things rather than passengers, fall within the statutory definition of a truck. Other vans, however, do not have such a cargo area. Instead they are designed and maintained with several rows of seats for the sole purpose of carrying passengers, with the remaining space being designed to carry luggage or other personal effects of the passengers. Such vans are frequently used for bus, sightseeing, and shuttle service. And, of course, many of them are in use as ordinary, private, personal or family passenger vehicles. It is the design, maintenance, and actual use of a van-type vehicle that determine whether it is a truck. Vans designed to carry cargo are trucks and are required to stop at agricultural inspection stations. Vans designed as passenger vehicles are not. § 570.15 Fla. Stat. (Supp. 1978); Eden v. State, 370 So.2d 826 (Fla. 1st DCA 1979). This distinction between cargo vehicles and passenger vehicles is also supported by an analysis of subsection (1)(a) of the statute. In listing the places and vehicles to which department officials are granted access, the statute draws a distinction between passenger automobiles and other motor vehicles. The seventh enumerated clause of subsection (1)(a) provides for inspection access to:
Motor vehicles, other than private passenger automobiles with no trailer in tow or any vehicle bearing an RV license tag;
§ 570.15(1)(a)7., Fla. Stat. (1977).[1] We conclude that in each of these cases, the appellants' vans came within the meaning of the word "truck" as used in section 570.15(2) because they were not being used as passenger vehicles as contemplated by the statute. Therefore, they were required to stop.
The appellants also present the closely related argument that section 570.15(2), Florida Statutes (Supp. 1978), denies them due process of law under the Florida and United States Constitutions because it is vague. They argue that since it is a penal statute, its vagueness renders it invalid on its face. Since the law is void, the appellants contend, their pursuit and apprehension for violation thereof were unlawful, and the evidence obtained in the course of the events which followed should have been suppressed.
A penal statute must be written in language sufficiently definite, when measured by common understanding and practice, to apprise ordinary persons of common intelligence of what conduct will render them liable to be prosecuted for its violation. State v. Ashcraft, 378 So.2d 284 (Fla. 1979); Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934).
As was stated above, section 570.15(1)(a), in providing the conditions for agricultural inspection access, demonstrates a legislative purpose to distinguish between vehicles carrying goods and vehicles carrying passengers. Furthermore, the above-quoted statutory definitions of "truck" in chapters 316, 320, and 323, Florida Statutes (1977), provide authoritative definitions and indicate what is the generally accepted definition of the word "truck."
*199 We conclude that the offense defined in section 570.15(2) is not vaguely expressed by virtue of any indefiniteness of the term "truck." Furthermore, ordinary persons of common intelligence can conclude from the statute that van-type vehicles that are designed, maintained, or used for the purpose of transporting goods rather than passengers are included in the meaning of the word "truck" as used in section 570.15(2).
Appellant Gluesenkamp argues that section 570.15, Florida Statutes (1977), violates principles of equal protection and equality of treatment under the United States and Florida Constitutions. He contends that the statute establishes a classification among motor vehicles using the highways and that some are required to stop at agricultural inspection stations while others are not. Subsection (2), as we have seen, creates a distinction between trucks, truck trailers, and motor vehicle trailers on the one hand and passenger vehicles on the other. The appellant also points out that at the time of his arrest, section 570.15(1)(a)7. provided for inspection access to "[m]otor vehicles, other than private passenger automobiles with no trailer to tow or any vehicle bearing an RV license tag; ... ." Motor vehicles exempted from the requirement of stopping for inspection, the appellant argues, are just as capable of carrying agricultural products within the regulatory jurisdiction of the department as are those vehicles that are required to stop. He argues that it is improper to exclude from the inspection requirement vehicles with license tags bearing the recreational vehicle designation, and points to evidence that it is a simple matter to obtain such a tag and to display it on a vehicle used for transporting goods.
As was discussed previously, section 570.15(1)(a) provides for "access" by various department officials to all of the enumerated places and conveyances that are "used" in any phase of the agriculture industry. The seventh enumerated clause, therefore, provides for access to all "motor vehicles" used in agriculture. Clause 7. also exempts some of these: "private passenger automobiles with no trailer in tow [and] any vehicles bearing an RV license tag." Private passenger automobiles with no trailer in tow and vehicles bearing "RV" license tags are therefore not among the conveyances to which the department is provided access, even when they are actually being used in some phase of the agriculture industry.
In deciding the merits of the appellant's equal protection challenge, the first step is to determine what kind of standard to apply. It might be suggested that the differential treatment provided for by the statute impinges upon the fundamental "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures... ." U.S.Const. amend. IV; art. I, § 12, Fla. Const. We think, however, that the required stop for inspection is not an unreasonable seizure. Stephenson v. Department of Agriculture and Consumer Services, 342 So.2d 60 (Fla. 1976). And after a vehicle has stopped for inspection, a search may be conducted only under certain circumstances. Section 570.15(1)(b), Florida Statutes (1977), provides:
If such access be refused by the ... driver of such aforesaid vehicle, the inspector or road-guard inspection special officer may apply for a search warrant which shall be obtained as provided by law for the obtaining of search warrants in other cases, or may conduct a search of any of the aforesaid vehicles without a warrant pursuant to s. 933.19.
The fourth amendment rights of users of the highways are protected under the statute. Compare Bagocus v. State, 359 So.2d 885 (Fla. 1st DCA 1978), with Powell v. State, 332 So.2d 105 (Fla. 1st DCA 1976).
Section 570.15 is a regulation of transportation and the use of the highways of the state. It is a valid exercise of the police power in furtherance of the public health and public economic good. Stephenson v. Department of Agriculture and Consumer Services, 342 So.2d 60 (Fla. 1976). It does not impinge upon any fundamental rights.
*200 The test to be applied in determining whether distinctions drawn by statutes such as this one are valid has been stated in innumerable cases, and was recently stated by the United States Court of Appeals for the Fifth Circuit: "In the absence of any suspect classification, invasion of fundamental interests, or invidious intent, all that the United States Constitution demands is that the classifications be rationally related to a legitimate state interest." Jackson v. Marine Exploration Co., 583 F.2d 1336, 1346 (5th Cir.1978). Under the Florida Constitution, the same principle applies. Ordinarily, the test is the "rational basis" test. See Landrau v. State, 365 So.2d 695 (Fla. 1978).
Acts of the legislature are presumed valid, and the burden is on the challenger to show that a legislative classification violates principles of equality. A legislative classification will be upheld where the distinction drawn rests on some real and practical basis in relation to the purpose of the legislation. See, e.g., Gammon v. Cobb, 335 So.2d 261 (Fla. 1976); Hunter v. Flowers, 43 So.2d 435 (Fla. 1949); State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367 (1915). If a legislative classification has such a reasonable basis, it does not violate equal protection simply because it is not drawn with perfect precision or because in its application some inequality results. Dandridge v. Williams, 397 U.S. 471, 474, 90 S.Ct. 1153, 1156, 25 L.Ed.2d 491 (1970); Lewis v. Mathis, 345 So.2d 1066 (Fla. 1977). A regulation of economic matters embodying a classification based on practical convenience need not apply with mathematical uniformity if it has such a rational basis. See, e.g., Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 (1932); Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155 (1932).
Applying the conventional standard, we hold that the distinction drawn by section 570.15 between vehicles designed, maintained, or used for the carriage of property on the one hand and passenger vehicles on the other is reasonably related to the Department of Agriculture's inspection functions and does not violate the equal protection clause of the United States Constitution or the equality guaranty of the Florida Constitution.
As has been recited above, the searches in cases no. 56,928 and no. 57,131, following pursuit and apprehension for violation of section 570.15(2), were based on consent or a warrant. No issue of the voluntariness of the consent or of the existence of probable cause in either of those cases is before us. Appellant Gluesenkamp, on the other hand, did not consent to the search of his van, and properly preserved for appeal the question of the legality of the search.
Since the agricultural inspector and law enforcement officer were refused access to Gluesenkamp's van and a search warrant was not obtained prior to conducting the search, the issue in this case is whether the search was properly conducted without a warrant pursuant to section 933.19, Florida Statutes (1977). § 570.15(1)(b), Florida Statutes (1977). Section 933.19 expressly adopts the holding of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), as the law of this State. In Carroll the defendants were convicted of transporting liquor in violation of the National Prohibition Act. The defendants and a companion had met with undercover federal prohibition agents in Grand Rapids. The agents said they were interested in buying some whiskey. The defendants said they would go get it and would be back shortly. They did not return, but their companion did and he explained that they would bring the whiskey the next day, which they never did. Three months later the federal agents saw the defendants in the same car they had the night the agents were supposed to buy whiskey from them. The agents pulled the defendants over and searched their car and found contraband liquor.
The defendants appealed their conviction, claiming their fourth amendment rights to be free from unreasonable search and seizure had been violated. The United States Supreme Court affirmed, holding that automobiles may be searched without a warrant when "there is known to a competent official, *201 authorized to search, probable cause for believing that [the] vehicles are carrying contraband or illegal merchandise." Id. at 154, 45 S.Ct. at 285. Because the agents had stopped the defendants on a highway connecting Grand Rapids and Detroit, a port of entry for illegal liquor, the Court held the agents had probable cause to suspect the defendants were transporting liquor. The Court emphasized that a different standard for searching an automobile than a house was justified because of the automobile's mobility.
While appellant Gluesenkamp does not question that the law enforcement officials had probable cause to enter and search his van, he suggests in his brief that the officials' actions in looking into his van from the outside constituted a search and that this preliminary search was not supported by probable cause. We believe, however, that the conduct of Cain and Gluesenkamp in illegally proceeding past the inspection station, together with the contradictory statements they made to the inspection officer regarding their cargo, provided probable cause supporting the limited intrusion by the law enforcement officers who subsequently arrived, looked in the van's windows, and saw the bundles which strongly suggested to them the presence of contraband.
Gluesenkamp contends that there were no exigent circumstances justifying a warrantless search since he and his companion had been detained and were not in a position to drive the van out of the jurisdiction. In short the argument is that Carroll does not apply where the automobile is no longer mobile.
This same argument was refuted by the United States Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), where the police, upon probable cause but without a warrant, searched the defendant's car parked outside the police station sometime after the defendant had been arrested. In holding that the police were not required to obtain a warrant, the Court stated:
Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained... .
Id. at 51-52, 90 S.Ct. at 1981 (footnote omitted). See also Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); Flynn v. State, 374 So.2d 1041 (Fla. 1st DCA 1979).
The facts in this case are even more compelling. Gluesenkamp, who owned the van, was not the one who was arrested for failing to stop at the inspection station since he was not the one driving at the time. Since he had the keys, he could have attempted to drive away at any time. There is no question that if he had, the police would have had the authority to stop him and search the van without a warrant. We see no reason why the police should be required to wait until an attempt is made to move a vehicle before they are allowed to search it.
*202 The reason for requiring certain vehicles to stop at the inspection stations is to allow the inspectors a little time in which to decide if there is probable cause for searching. Once a determination is made, a search should either be made or the driver should be allowed to continue. The fourth amendment prohibits unreasonable seizures as well as unreasonable searches. Detaining a driver and his vehicle for an inordinate amount of time is an unreasonable seizure. Cf., Seuss v. State, 370 So.2d 1203 (Fla. 1st DCA 1979); Miller v. State, 368 So.2d 943 (Fla. 1st DCA 1979). If the inspector is unsure of whether sufficient probable cause exists, he may detain the vehicle and seek assistance as was done in this case.
The seizure in this case was not unreasonable. Although close to two hours had passed from the time the vehicle was stopped at the time it was searched, there was no evidence of undue delay. Most of the time was spent in contacting and waiting for a deputy sheriff and an assistant state attorney, men who were more qualified to decide if sufficient probable cause existed. They conducted the search soon after they determined probable cause existed. Since neither the search nor the seizure were unreasonable, Gluesenkamp's fourth amendment rights were not violated.
The judgments of conviction are affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs specially with an opinion.
ALDERMAN, Justice, concurring specially.
Although I concur with the majority opinion construing and upholding the constitutionality of section 570.15, Florida Statutes (1977), and defining trucks to include a certain type of van, I note that an inspector will not be able generally to discern from the outside appearance of a van passing on the highway whether it falls within the definition of truck and, consequently, is required to stop for inspection, or whether the van is excluded from the provisions of section 570.15 because it is a noncargo, passenger carrying van. Therefore, when a van passes an inspection station without stopping, the inspector has a right to pursue and to stop the van and to determine by looking inside whether it is a passenger van or a cargo van. If it is determined that the van is a cargo van, the inspector can request that it be opened for inspection. If, while looking into the van, the inspector sees contraband in plain view, he then has probable cause to seize the contraband even if the van is a passenger van and not a truck as defined by section 570.15.
NOTES
[1] Chapter 78-180, Laws of Florida, amended the seventh enumerated clause of section 570.15(1)(a), effective June 8, 1978, to read:

Motor vehicles, except private passenger automobiles with no trailer in tow, travel trailers, camping trailers, and motor homes as defined in s. 320.01(1)(b); § 570.15(1)(a)7., Fla. Stat. (Supp. 1978).