390 So.2d 394 (1980)
DEPARTMENT OF CORRECTIONS, Appellant and Cross-Appellee,
v.
Andrew J. ROSEMAN, Samuel Washington, Shirley Ann Bell and Anna Holden, Appellees and Cross-Appellants.
No. UU-192.
District Court of Appeal of Florida, First District.
November 4, 1980.
Rehearing Denied December 15, 1980.
Jim Smith, Atty. Gen., and Gerald B. Curington, Asst. Atty. Gen., Tallahassee, for appellant and cross-appellee.
Richard A. Belz and Diana B. McPherson, Gainesville, for appellees and cross-appellants.
ROBERT P. SMITH, Jr., Judge.
The Department of Corrections appeals from DOAH hearing officer Tremor's order in Section 120.54(4) proceedings holding that the Department's proposed Rule 33-3.13, Fla. Admin. Code, is an invalid exercise of delegated legislative authority in that it restricts fundamental constitutional rights of the affected citizens-inmates of the Florida prison system and the noninmates whom they wish to marry while still incarcerated-in the absence of a compelling *395 state interest and therefore in violation of the due process and equal protection clauses of the Fourteenth Amendment. Other points are also raised, but the threshold issue is whether prison inmates such as appellees Roseman and Washington and noninmates such as appellees Bell and Holden, who wish to marry Roseman and Washington, respectively, have a right to marry which is in constitutional terms a fundamental right, subject to restriction only in service of a compelling state interest and then only by means of the least restrictive alternative.
We hold that prison inmates have no fundamental right to marry and that noninmates have no fundamental right to marry inmates while they are yet in prison. Applying the less stringent standard appropriate for Fourteenth Amendment challenges to state action not impairing fundamental rights, we hold that the proposed Rule 33-3.13 has a rational basis in service of a legitimate state interest and that it is constitutionally valid. Neither is the Rule invalid on the other grounds asserted. We therefore affirm in part, reverse in part, and sustain the proposed Rule.
The proposed Rule prohibits marriage by inmates who are sentenced to death, inmates under life sentence who must serve at least 25 years before parole, and inmates who wish to marry other inmates or other prisoners as defined by Section 944.02(5), Florida Statutes (1979). Inmates not within those categories will be permitted to marry under the following circumstances:
(a) In the event of a current pregnancy where both the inmate and the proposed spouse acknowledge they are the expected parents of a child.
(b) To legitimize a child already born.
(c) If the inmate's release date can be determined definitely to be within one (1) year and the inmate is a participant in the community release and furlough program.
The hearing officer's order aptly frames the constitutional issue by these findings of fact:
(13) Testifying on behalf of the Department were various witnesses who were accepted as experts in the areas of prison functioning and administration; religion and marriage counseling as it pertains to inmates; psychological, emotional and mental health of inmates; and prison programs and inmate behavior in regard to rehabilitation. These witnesses gave testimony regarding the Department's bases or rationale for the proposed rule in question. It was considered that the terms contained in the proposed rule were the only logical approach to a difficult social problem and that a completely open policy does not address the problem. The Department's responsibilities include the protection of society from those who commit crimes. This responsibility is carried out by providing adequate security to others and by helping the inmate in the institutional and the noninstitutional setting. A part of the rehabilitation process includes instilling in the inmate a sense of responsibility for his actions. It was considered that, with the exception of the three circumstances wherein marriages are permitted under the proposed rule, there is no justification for an inmate to enter a marriage relationship while incarcerated. The presumptive benefits of marriage, according to one expert's observations, do not accrue when one spouse is in an institutional setting, and a marriage created while the inmate is incarcerated can often have adverse effects with regard to rehabilitation. These effects include stress due to separation, a feeling of helplessness, a lowering of self-esteem and anxieties regarding children, finances, illness and unfaithfulness. From the testimony adduced at the hearing, it appears that a prime rationale for the proposed rule is the agency's conclusion that a new marriage created in a prison setting with an incarcerated spouse lacks any tangible benefits. No studies were offered by any party as to whether marriages assist the rehabilitation of an inmate.
(14) The agency was also concerned with security problems which would surround *396 the actual marriage ceremony. These problems included the pulling of security personnel from other posts or duties, the introduction of contraband from those outside, the shortage and high turnover of security and clerical personnel at the institutions, the distraction provided by the ceremony and the possibility of escapes. Other concerns of the agency included the financial costs involved for an open marriage program and the resulting detraction of funds for other programs. Another area of concern by the agency was an observed characteristic of prison inmates of being manipulative and conniving and the resulting victimization of the proposed or existing spouse.
Concerning these facts the hearing officer expressed the following conclusions:
Here, it appears from the testimony and exhibits adduced at the hearing that the prime basis upon which the challenged rule is grounded is the decision of the Department that the strained relationship which prisoners can enter to support a new marriage provides no tangible benefits to either the inmate or his proposed spouse, except under the three instances where marriage is permitted under the rule. Second to this, the agency has determined that inmate marriages would have substantial adverse impacts upon funds, security and rehabilitation. Do these reasons, when analyzed, provide a sufficient basis for denying inmates the right to marry while they are incarcerated except in the limited instances where there is an unborn or illegitimate child or when the inmate is in the last year of confinement?
.....
Here, there appears to be no compelling connection between the agency's almost total prohibition of marriage and its interest in security, deterrence or rehabilitation. While the efforts of the Department to produce and foster lasting and successful marriages is laudable, it is not the function of the Department of Corrections to regulate the relationship between two persons except as the regulation may relate to security, order, deterrence or rehabilitation. The security risk involved is certainly a legitimate concern. However, there are means other than prohibition available to the Department to avoid increased security risks and financial burdens upon the Department. These could include a limitation on the number and elaborateness of the ceremonies per week or month, and having the ceremonies performed in the visiting area on regular visiting days with regular visitation rules being applicable. The marrying parties could be required to pay all direct and indirect costs involved. No evidence was adduced tending to prove that a limited marriage rule acted as a deterrence from criminal acts. The evidence with regard to the rehabilitative effects of and future prospects for success of a marriage entered into during incarceration was tenuous at best. No studies in this realm were offered, and most of the opinion testimony from experts would be equally applicable to any relationship with an incarcerated or institutionalized person.
And the hearing officer entered the following summary conclusion:
In summary, it is concluded that the total prohibition against marriage by inmates except when one of three limited criterion is met constitutes an unnecessary intrusion into a basic fundamental right. There was no showing of a compelling state interest which could not be served in a less restrictive manner. While the Department may develop reasonable rules relating to the allocation of costs, time allotted and manner of conducting marriage ceremonies, it should not be permitted to prohibit one's right to marry except in compelling circumstances. A restriction on an inmate's fundamental right which furthers an important or substantial interest of penal administration is invalid if its sweep is unnecessarily broad. Procunier v. Martinez, 416 U.S. 396. A blanket prohibition against marriage with three limited exceptions *397 constitutes an arbitrary and capricious act and is, therefore, invalid.
The marriage condition sought by these male inmates and to noninmate women whom they wish to marry, and who wish to marry them, is a marital condition without cohabitation, sexual intimacy, procreation, or child rearing. The state they seek is ceremonial-ceremony which we may assume would be as psychologically beneficial to some prisoners as it would be wrenching and tantalizing to others. Concerning the asserted right of prisoners and their chosen partners to marry in that ceremonial sense, a three judge federal district court said in Johnson v. Rockefeller, 365 F. Supp. 377 (S.D.N.Y. 1973), aff'd sum nom. Butler v. Wilson, 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974),
[W]e are here dealing with a situation where the basis of the challenge to state power is the mere formal ceremony of marriage. That ceremony has none of the elements of marital privacy which bring the marriage relationship under constitutional protection. See Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).
For the reasons stated at length in Johnson, we decline to extend fundamental right status to marriage by state prisoners. See also Hudson v. Rhodes, 579 F.2d 46 (6th Cir.1978), cert. den., 440 U.S. 919, 99 S.Ct. 1241, 59 L.Ed.2d 470 (1979). The testimony of the Department's witnesses, summarized by the hearing officer, reveals a rational basis for the Rule's classifications and restrictions and that the Rule serves legitimate state interests in the security and discipline of its prisons and the control and management of its criminal offender prisoners. The question of whether restrictions on marriage are good or bad for prisoners in terms of rehabilitative or other penological objectives, being reasonably debatable, is without constitutional implication. See Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629, 640 (1977); Gluesenkamp v. State, 391 So.2d 192 (Fla. 1980), and cases cited p. 200.
We agree with the hearing officer that the Department has statutory authority to promulgate rules on the subject in question, Sections 20.315, 944.09, Florida Statutes (1970); that the estimate of economic impact accompanying the proposed rule satisfies Section 120.54(2)(a); and that the Department complied with the notice requirements of Section 120.54.
Insofar as the hearing officer's order sustains proposed Rule 33-3.13 against appellees' nonconstitutional challenges, it is AFFIRMED; insofar as it holds that Rule 33-3.13 offends the Fourteenth Amendment to the United States Constitution, the order is REVERSED.
BOOTH and SHAW, JJ., concur.