SHIVERS, Judge.
Defendants appeal from their judgments of conviction of possession of marijuana, contending the trial court erred in denying their motion to suppress evidence discovered in their van by an agricultural inspector and further erred in denying their challenge to the jury panel on the ground that the prospective jurors were not selected or drawn according to law. We reverse the trial court’s denial of defendant’s motion to suppress and therefore do not reach the issue of whether the panel of prospective jurors were properly selected or drawn according to law.
On the morning of May 29, 1979, Agricultural Inspection Officer Pease observed the defendants’ 1976 Ford van pass an agricultural inspection station on Interstate 75 without stopping. He pursued the van and subsequently pulled it over to the side of the highway. He approached the van and asked to see defendant Sandra Sue Knoble’s driver’s license, explaining that vans were required to stop at agricultural inspection stations. Following a brief conversation, Inspector Pease asked whether he could look inside the van in search of agricultural products. The defendants consented and Kenneth Knoble opened the side door of the van. Inspector Pease looked into the van, observed a built-in bed in the rear of the van, and ordered the defendants to accompany him back to the inspection station.
Upon returning to the station, he informed the defendants of the statute requiring vans to stop at inspection stations and read them Miranda warnings. Inspector Pease testified the defendants then consented to a further inspection of the van. Defendant Sandra Sue Knoble denied that the defendants consented to an inspection. After opening the rear door, Inspector Pease testified he first smelled the odor of marijuana coming from underneath the built-in bed and observed packages which he believed to contain marijuana. He then notified the Hamilton County Sheriff’s Department and defendants were subsequently arrested and charged with possession of marijuana.
Defendants filed a second amended motion to suppress the marijuana, contending, among other things, that the inspector did not have statutory authority to initially stop the van but, if he did, he had no authority and no probable cause to detain defendants and require them to submit to a more extensive inspection back at the station. Following a hearing on the motion to suppress at which the defendants introduced evidence that the van had been customized and redesigned as a recreational vehicle, the trial court denied the motion to suppress. Defendants were subsequently tried and convicted of unlawful possession of more than five grams but less than 100 pounds of marijuana.
We conclude the trial court erred in denying defendants’ motion to suppress because Inspector Pease had no authority or probable cause to detain the defendants and require them to submit to a more extensive inspection of the van following his initial roadside inspection. The record shows the defendants were driving a recreational vehicle and the Legislature has determined that agricultural inspectors have no right of access to recreational vehicles as opposed to cargo vehicles. Section 570.15, Florida Statutes (1978). Section 570.15(l)(a) provides agricultural inspectors with full access to “trucks” and “motor vehicles, except private passenger automobiles . .. and motor homes as defined in Section 320.01(l)(b) .... ” Section 320.01(l)(b)4, Florida Statutes (1978), defines “motor homes” as a vehicular unit of specified proportion, “primarily designed to provide temporary living quarters for recreational, camping, or travel use.” Section 570.15(2), Florida Statutes (1978), makes it unlawful for any “truck” to pass an agricultural inspection station without first stopping for an inspection.
*87 However, only certain vans fall under the definition of “truck” as used in Section 570.15. Gluesenkamp v. State, 391 So.2d 192 (Fla.1981); Eden v. State, 370 So.2d 826 (Fla.1st DCA 1979). “It is the design, maintenance, and actual use of a van type vehicle that determine whether it is a truck. Vans designed to carry cargo are trucks and are required to stop at agricultural inspection stations. Vans designed as passenger vehicles are not.” Gluesenkamp, supra, at 198. The State may require vehicles to stop at inspection stations although the inspectors may have no right of access to them under the statute in order to allow the inspectors to determine whether they have the right of access. Stephenson v. Department of Agriculture, 342 So.2d 60 (Fla.1976); Gluesenkamp, supra. Stephenson held that trucks are required to stop at inspection stations in order for the agricultural inspectors to determine whether they have a right of access under Section 570.15 and, if so, whether to exercise it. Eden, supra, and Gluesenkamp, supra, in turn, held that the inspectors do have the right of access to vans designed or maintained to carry cargo.
In the present case, although Stephenson, supra, authorized the initial stop of defendants’ van when they passed the station in order to allow the inspector to determine whether it was a cargo van or a passenger van, the inspector had no authority to seize, detain and inspect the vehicle after observing the van was primarily designed as a recreational passenger vehicle. The evidence presented at the suppression hearing below showed that defendants’ van was maintained as a recreational passenger van rather than a cargo designed van and was not required to stop at the inspection station. An expert witness for the defense testified that the van had undergone a major interior customization, including wood or masonite paneling, carpeting, built-in bed, a built-in stereo system, and facilities for camping. The van contained customized “market chairs” which had been installed in place of the standard manufacturer’s chairs. This testimony was corroborated by photographs admitted into evidence at the suppression hearing and at trial. The expert witness opined that the former cargo van had been redesigned for recreational use. He further noted that the spare tire was mounted on the back exterior of the van which was indicative of cargo vans which had been redesigned for recreational use since cargo vans usually carry the spare tire inside the vehicle. One of the defendants testified that they had been using the van as living and camping quarters for several months prior to their arrest and this testimony was supported by the inventory of items found in the van including camping gear, sleeping bags, blankets, pillows, an axe, toiletry items, an ice chest, towels, and luggage.
After initially stopping the defendants’ van on the roadside, the inspector testified the defendants voluntarily allowed him to look into the van. He testified that he probably would not have required the defendants to return to the station for further inspection had he not seen the storage compartment beneath the bed in the rear of the van. We do not believe the presence of the storage compartment was sufficient in and of itself to bring the van within the parameters of Section 570.15 in order to give the inspector statutory access to inspect the van. Many motor homes, vans, and other recreational motor vehicles exempt from the inspector’s statutory right of access contain some storage compartments. Additionally, following the initial roadside inspection, the inspector did not have probable cause to believe the defendants were in possession of either marijuana or agricultural products. He testified that he had not seen or smelled the marijuana until after he conducted the second inspection back at the station.
In sum, once the inspector was able to determine that the van was a recreational passenger vehicle rather than a cargo van, he was without authority to return the van to the station for a more extensive inspection under Section 570.15. He testified that he lacked probable cause to believe that defendants were violating the law until af *88 ter he conducted the second inspection. Therefore, the evidence which was seized was the result of an illegal search and seizure and should have been suppressed by the trial court. Accordingly, defendants’ judgments of conviction are reversed and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
REVERSED and REMANDED.
WENTWORTH, J., and LILES, WOOD-IE A. (Ret.), Associate Judge, concur.