411 So.2d 169 (1982)
Thomas William MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 58173.
Supreme Court of Florida.
January 21, 1982.
Rehearing Denied April 7, 1982.
William R. Slaughter, II of Slaughter & Slaughter, Live Oak, and James K. Jenkins of Stroup, Goldstein, Jenkins & Pritzker, Atlanta, Ga., for appellant.
*170 Jim Smith, Atty. Gen., and Miguel A. Olivella, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This is a direct appeal from the Circuit Court of the Third Judicial Circuit, in and for Hamilton County which held constitutional section 570.15, Florida Statutes (Supp. 1978). Appellant, Thomas William Martin, defendant below, filed his notice of appeal prior to the 1980 amendment of the jurisdiction of this Court. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
Defendant and a companion, who was driving, were travelling northward on Interstate 75 in defendant's van when they passed an agricultural inspection station without stopping. Agricultural Inspector E.M. Shope observed the van pass the station and, as a result of its failure to stop, pursued it and pulled it over to question the driver regarding its contents. After being told that the van contained several small bags of fruit, Mr. Shope requested permission to look inside the back section of the vehicle so that he might see the fruit himself. When the van's side door was opened, the inspector saw the bags of fruit and, for the first time, the defendant, who was lying on a raised platform in the rearmost section of the compartment. After identifying defendant, the inspector, because he could not see the space under the raised platform, asked that the door at the back of the van be opened. He was told that the rear door would not open. Not being satisfied with the thoroughness of his search, Mr. Shope informed the occupants of the van that they had to return to the inspection station.
Upon arrival at the inspection station, defendant, at Mr. Shope's request, again opened the side door so that the inspector could enter the van in order to search it more thoroughly. Removing the fruit, which had been re-stacked so that it covered the space under the raised platform, the inspector looked into the recessed area and saw several "brown bundles" which, upon being opened, were determined to contain cannabis. Defendant and his companion were then arrested and charged with possession of the marijuana.
After denial of his Motion to Dismiss and Suppress, defendant pleaded nolo contendere to the charge, reserving his right to appeal the denial of the motion. He was thereafter sentenced to four years imprisonment and ordered to pay a $5,000 fine. This appeal followed.
Defendant first argues that section 570.15 "is unconstitutional in that it arbitrarily distinguishes between passenger and recreational vehicles on the one hand, and all other vehicles on the other, with no rational basis related to the purported purpose of the statutory scheme  the regulation of agricultural products." We specifically held otherwise in our opinion in Gluesenkamp v. State, 391 So.2d 192, 200 (Fla. 1980):
Applying the conventional standard, we hold that the distinction drawn by section 570.15 between vehicles designed, maintained, or used for the carriage of property on the one hand and passenger vehicles on the other is reasonably related to the Department of Agriculture's inspection functions and does not violate the equal protection clause of the United States Constitution or the equality guaranty of the Florida Constitution.
Defendant also contends that section 570.15 "is unconstitutional in that it fails to give sufficient notice as to which vehicles are covered by the statutory provisions for inspection, especially when applied to van-type vehicles ..." Again, as with defendant's first argument, we held to the contrary in Gluesenkamp, when we stated:
We conclude that the offense defined in section 570.15(2) is not vaguely expressed by virtue of any indefiniteness of the term "truck." Furthermore, ordinary persons of common intelligence can conclude from the statute that van-type vehicles that are designed, maintained, or used for the purpose of transporting goods rather than passengers are included *171 in the meaning of the word "truck" as used in section 570.15(2).
Id. at 199.
Our opinion in Gluesenkamp is also relevant to the argument in defendant's third point on appeal  that his van was excepted from the provisions of section 570.15 and so the detention and search complained of were illegal. Defendant notes that § 570.15(1)(a) gives agricultural inspectors full access to "[m]otor vehicles, except private passenger automobiles with no trailer in tow, travel trailers, camping trailers, and motor homes as defined in s. 320.01(1)(b)" (emphasis added), and that § 570.15(2) makes it unlawful for a truck to pass an inspection station without stopping for inspection. He then contends that his van was customized in such a fashion that it clearly is a motorhome, as defined in § 320.01(1)(b) and thus was exempt from the provisions of §§ 570.15(1)(a)7 and 570.15(2).
The appellants in Gluesenkamp similarly argued that their vans were not trucks within the meaning of Chapter 570. We disagreed, holding that their vehicles did come within the meaning of "truck", observing:
Some vans are designed or maintained so as to have a cargo area to the rear of the front seats. Such vans, since they are designed specifically for transporting things rather than passengers, fall within the statutory definition of a truck. Other vans, however, do not have such a cargo area. Instead they are designed and maintained with several rows of seats for the sole purpose of carrying passengers, with the remaining space being designed to carry luggage or other personal effects of the passengers. Such vans are frequently used for bus, sightseeing, and shuttle service. And, of course, many of them are in use as ordinary, private, personal or family passenger vehicles. It is the design, maintenance, and actual use of a van-type vehicle that determine whether it is a truck. Vans designed to carry cargo are trucks and are required to stop at agricultural inspection stations. Vans designed as passenger vehicles are not.
Id. at 198.
In light of the above analysis, it was reasonable for the trial court to find that defendant's van is a truck as that term is used in § 570.15. Although the rear compartment of said van evidently was not intended to be used for cargo carrying alone, it does not appear to have been designed solely to carry passengers and their effects either. The finding that the van fell within the definition of a truck cannot be reversed for having no basis in fact. The record indicates that the trial judge personally inspected defendant's van prior to holding that it qualified as a truck, and his finding is not one for which we are free to substitute our own.
Finally, we consider defendant's contention that the trial court erred in upholding the warrantless search of his vehicle on the basis of his alleged consent. He argues that the state failed to meet its burden of proving that consent was freely and voluntarily given, and that he did not give the agricultural inspector permission to look under the platform where the marijuana was located. Defendant cites several cases in which searches of vehicles carrying concealed marijuana were found to have been conducted without proper consent. See Bailey v. State, 319 So.2d 22 (Fla. 1975); Villari v. State, 372 So.2d 522 (Fla. 1st DCA 1979); Rose v. State, 369 So.2d 447 (Fla. 1st DCA 1979); Gonterman v. State, 358 So.2d 595 (Fla. 1st DCA 1978); and Powell v. State, 332 So.2d 105 (Fla. 1st DCA 1976).
Despite, however, the arguments raised by defendant, the trial court found that the search complained of was conducted with defendant's consent. There is sufficient evidence to support that finding. The record reflects that after he had seen part of the van, been unable to look under the platform, and ordered the van back to the inspection station, Mr. Shope asked defendant to open the door once more so that he could see how much more fruit the van contained. As appellee notes, at the time of said request, the only spot that had not *172 been searched was the area under the platform, so defendant must have known that the inspector, in looking for more fruit, would search that area.
Defendant contends that in opening the door and giving the inspector access to the van's interior, he was not consenting to a search of the area under the platform but instead to that area where the bags of fruit lay. However, as previously noted, the trial court found that defendant did consent to the search, and the voluntariness of such consent "is a question of fact to be determined from the totality of all the circumstances." Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1980), quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).
In Denehy, we also observed that "[s]ince there was no evidence of coercion such as prolonged detention or a threat to obtain a search warrant ... or repeated requests for consent, ... the trial judge ... could properly conclude from the officer's testimony that the appellants voluntarily consented to the search of the truck." Id. at 1217 (citations omitted). The same is true in the case sub judice. No coercion is evidenced by the record; the disagreement seems based more upon a question of what parts of the van were expected to be searched. We think it clear that the trial judge could properly conclude that the inspector acted with defendant's consent in searching the compartment in which the marijuana was found, and we decline to disturb his finding.
Having considered each of defendant's points on appeal, and finding that none warrant reversal of the judgment and sentence imposed by the trial court, we affirm the same.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.