**Ronald BRADBURY, Plaintiff,**

v.

**Louie L. WAINWRIGHT, Defendant.**

**No. 80–282–Civ–J–JHM.**

United States District Court,
M. D. Florida,
Jacksonville Division.

May 10, 1982.

Richard A. Belz, Gainesville, Fla., for plaintiff.

Gerald B. Curington, Tallahassee, Fla., for defendant.

## OPINION

JOHN H. MOORE, II, District Judge.

This cause is before the Court upon the parties' cross-motions for summary judgment. Plaintiff Bradbury, an inmate of the Florida penal system, contends that defendant Wainwright, Secretary of the Department of Corrections, has promulgated an administrative rule (Rule 33–3.13) that unconstitutionally deprives plaintiff of his right to marry while incarcerated.[1] Defendant avers that prison inmates have no fundamental right to marry, or, alternatively, that Rule 33–3.13 is constitutional in light of the State's compelling interest in rehabilitation and prison security. Because the Court finds Rule 33–3.13 to be a lawful and constitutional exercise of administrative power, the Court will enter judgment on defendant's behalf.

Any thoughtful analysis of the constitutional right of a prison inmate to marry while incarcerated must begin with an examination of *Johnson v. Rockefeller*, 365 F.Supp. 377 (S.D.N.Y.1973), *affirmed sub nom. without opinion, Butler v. Wilson*, 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974). In that case, a New York civil death statute prohibited state inmates from marrying while imprisoned. When challenged, the law was upheld as being a penalty within the State's power to prescribe and, additionally, as being an acceptable exercise of the State's general power over the institution of marriage. Moreover, the three-judge panel determined that:

> In actuality the effect of the statute is to deny to Butler only the right to go through the formal ceremony of marriage. Those aspects of marriage which make it "one of the 'basic' civil rights of man," *Loving v. Virginia*, 388 U.S. 1, 12 [87 S.Ct. 1817, 1823–1824, 18 L.Ed.2d 1010] ... (1967)—cohabitation, sexual intercourse, and the begetting and raising of children—are unavailable to those in Butler's situation because of the fact of their incarceration. The statute adds nothing of significance to the effects of such incarceration.

*Id.* at 380.

Plaintiff apparently concedes that the Florida Legislature could constitutionally prohibit inmates from marrying: "New York has, of course, restricted the right to marry *by statute* to life termers and the *Florida Legislature* may well see fit to do the same thing." Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, page 10 (emphasis in original). Absent such a statute, however, plaintiff contends that inmates have a fundamental right to marry that cannot be barred by a mere administrative rule.

That argument has already been rejected in the Court's order of November 16, 1981. Although it is true that no Florida statute specifically prohibits the marriage of a convicted felon, *see Holden v. Florida Dep't. of Corrections*, 400 So.2d 142 (Fla. 1st D.C.A. 1981), it does not follow that a prisoner's right to marry cannot be circumscribed by a

---

1. Rule 33–3.13(1) states that:
   The following inmates are not permitted to marry:
   (a) Inmates under sentence of death.
   (b) Inmates under sentence of life imprisonment and required to serve no less than twenty-five (25) years before becoming eligible for parole, except they may marry if they become eligible under sub-section 2(c).
   (c) Inmates to prisoners as defined in Section 944.02(5), Florida Statutes.

valid Department of Corrections rule. In addressing the constitutionality of Rule 33–3.13, Florida courts have acknowledged the statutory authority of the Florida Department of Corrections to promulgate rules on marriage. *Department of Corrections v. Roseman*, 390 So.2d 394, 397 (Fla. 1st D.C.A. 1980). *See also, Holden v. Florida Dep't. of Corrections*, 400 So.2d at 143. Rule 33–3.13 does not conflict with existing Florida statutes, and Fla.Stat. §§ 20.315 (1979) and 944.09 (1979) are surely ample legislative authority for Rule 33–3.13 in view of the above-cited decisions of Florida courts. *See, i.e., Georgia v. United States*, 411 U.S. 526, 536, 93 S.Ct. 1702, 1708, 36 L.Ed.2d 472 (1973).

The absence of a civil death statute in Florida, rather than suggesting the invalidity of the administrative rule in question, merely indicates that the restrictions complained of by plaintiff are not appropriately characterized as "punishment." In *Flemming v. Nestor*, 363 U.S. 603, 613–14, 80 S.Ct. 1367, 1374–1375, 4 L.Ed.2d 1435 (1960), the Supreme Court held that:

> In determining whether legislation which bases a disqualification on the happening of a certain past event imposes punishment, the Court has sought to discern the objects on which the enactment in question was focused. Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected. The contrary is the case where the statute in question is evidently aimed at the person or class of persons disqualified.

In analyzing *ex post facto* law, the Supreme Court has stated that:

> The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession.

*DeVeau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960) (*per curiam*) (citation omitted).

In this case, it appears that the provisions of Rule 33–3.13 cannot properly be termed "punishment" for past acts. That they are aimed at the activity of marriage rather than at the class of persons disqualified is illustrated by the Department of Corrections memorandum setting forth the facts and circumstances justifying the rule, said memorandum being required by Fla.Stat. § 120.54(1) (1980). The memorandum outlines detrimental effects of inmate-to-noninmate marriages upon both spouses and the marriage itself. A few of the justifications for the rule are:

(1) New marriages tend to create suspicion as to the "outside" spouse's conduct, and may cause confusions and hostility on the part of an inmate undergoing institutional rehabilitation;

(2) Manipulative inmates may enter into marriage for the purpose of obtaining money or gifts from the spouse;

(3) Most inmates cannot fulfill financial responsibilities of the marriage;

(4) Inmates must be taken outside of the prison in order to fulfill all requirements for marriage, thus increasing security problems.

Attachment to Defendant's Answers to Plaintiff's First Interrogatories.

Moreover, an extensive analysis of Rule 33–3.13 by a Florida District Court of Appeal revealed no indication that the rule was penal in nature; in *Department of Corrections v. Roseman*, 390 So.2d at 395, the Court considered evidence of the effect of a prison marriage upon rehabilitation and suggested the possibility that Rule 33–3.13 might be "the only logical approach to a difficult social problem." The fact that the statute being interpreted in *Johnson* was deemed to be penal legislation does not preclude this Court from reaching a different conclusion as to the rule promulgated

by· the Florida Department of Corrections and at issue here.[2]

Having determined that the rule in question will not be upheld as a penalty, which is the State's prerogative to prescribe, this Court must now analyze the nature of the right claimed by plaintiff. As plaintiff has correctly suggested, "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–1824, 18 L.Ed.2d 1010 (1967). Although *Loving* arose in the context of racial discrimination, other Supreme Court decisions have confirmed that the right to marry is of fundamental importance for all individuals. *Zablocki v. Redhail*, 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978). "Marriage and procreation are fundamental to the very existence and survival of the race." *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942).

It is also true, however, that federal courts are normally reluctant to interfere with matters of internal prison administration. *Hooks v. Kelley*, 463 F.2d 1210, 1211 (5th Cir. 1972). The very nature of lawful incarceration " 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). As the Supreme Court stated in *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (citations omitted):

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

Of course, a policy of judicial restraint does not include failure to take cognizance of prisoners' valid constitutional claims. *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Nonetheless, the Court finds that the rule from which plaintiff seeks relief does not violate his constitutional rights. The Court must assess plaintiff's constitutional challenge of Rule 33–3.13 in light of such legitimate penal objectives as deterrence, rehabilitation, and internal security. *See Pell v. Procunier*, 417 U.S. at 822–23, 94 S.Ct. at 2804. As stated in *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2540, 53 L.Ed.2d 629 (1977):

> Prisons, it is obvious, differ in numerous respects from free society. They, to begin with, are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. In seeking a "mutual accommodation between institutional needs and objectives [of prisons] and the provisions of the Constitution that are of general application," *Wolff v. McDonnell*, 418 U.S. [539] at 556 [94 S.Ct. 2963 at 2974–2975, 41 L.Ed.2d 935], this Court has repeatedly recognized the need for major restrictions on a prisoner's rights. *See, e.g., id.*, at 561–562 [94 S.Ct. at 2977–2978]; *Lanza v. New York*, 370 U.S. 139, 143 [82 S.Ct. 1218, 1220–1221, 8 L.Ed.2d 384] (1962).

Recognizing the need for such restrictions on an inmate's rights, this Court agrees with the *Johnson* rationale that the State's interest in marriage extends to the power to deny, through a valid Department of Corrections rule, the right to marry to prisoners who cannot be expected to perform the duties and obligations of a spouse. Several courts have concurred with the *Johnson* analysis in concluding that "A prisoner has no absolute constitutional right to undergo a marriage ceremony while incarcerated."

---

**2.** The Court furthermore notes that characterization of New York's death statute as punitive was not unquestioned in *Johnson*. See Judge

Lasker's concurring and dissenting opinion at 381, n.1.

*Polmaskitch v. United States*, 436 F.Supp. 527, 528 (W.D.Okl.1977). *See also, Hudson v. Rhodes*, 579 F.2d 46 (6th Cir. 1978), *cert. denied*, 440 U.S. 919, 99 S.Ct. 1241, 59 L.Ed.2d 470 (1979) (dismissal of suit to enjoin enforcement of unwritten Department of Rehabilitation and Corrections policy forbidding marriage of incarcerated persons affirmed on authority of *Johnson* ); *Wool v. Hogan*, 505 F.Supp. 928 (D.Vt.1981) (denial of inmate's request to marry mother of infant daughter); *In re Goalen*, 30 Utah 2d 27, 512 P.2d 1028 (Utah 1973), *appeal dismissed/cert. denied*, 414 U.S. 1148, 94 S.Ct. 905, 39 L.Ed.2d 104 (1974) (warden's refusal to permit petitioner to marry a convict, pursuant to Board of Corrections Rules and Regulations and legislative authority granted to such agency, not violative of federal constitutional rights). *Contra Salisbury v. List*, 501 F.Supp. 105 (D.Nev.1980).

This opinion having resolved this case entirely, judgment will be entered for defendant.